## Fisk, et al. v. Carpenter, et al.

(Decided June 6, 1922.)

### Appeal from Boone Circuit Court.

1. Wills—Construction.—A will which gives to the wife all the proceeds of the estate during her natural life, bestows upon her during her life in fee all the income of such estate, and she may use or dispose of it in any way that may please her.

2. Wills—Advancements.—Where a father loans to his sons sums of money for which he takes notes bearing interest at a given rate "from date until paid," and does not thereafter attempt to collect said notes during his lifetime although he lives many years after the making of the notes, and in his will mentions the loans to his sons, giving the date, the amount and the rate of interest, adding, "I will and desire in the final settlement of my estate that he be charged five per centum until paid," such loan will be treated as an advancement, and the testator having directed that interest be charged the devisee will be required to account to the estate for five per cent interest thereon.

3. Wills—Advancements—Interest.—Ordinarily a devisee is not required to pay interest on advancements, but where the testator specifically provides that he shall do so in order to make the other heirs equal with him, the provision of the testamentary paper will be enforced.

O. M. ROGERS for appellant.

S. W. TOLIN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This litigation involves the question of whether certain children and devisees, under the will of Able Carpenter, who died a citizen of Boone county in 1903, are liable for interest on sums of money loaned or advanced by the

testator to said children previous to the making of the will, and the solution of this question depends upon the construction placed upon the provisions of the testamentary paper. The will, which bears date December 31, 1897, and was probated in June, 1903, shortly after the death of the testator, contains the following provisions:

"I will and desire that my beloved wife, Mary A. Carpenter, have the proceeds of my estate entire less the taxes and keeping up repairs of my realty, and I will and desire first, that all my just debts be paid and I appoint my beloved wife as my executor without bond in counsel with John Ben Dixon, my nephew, of Boone county, and to collect all outstanding (debts) and sell personal property if it be necessary to pay just debts and also if necessary sell enough real estate to pay my just debts and (I) will and desire that my beloved wife have the above proceeds during her natural life or (while she) remains my widow. I have three sons, namely, John W. Carpenter, deceased, Wm. Eli Carpenter and Everett Carpenter. all of whom I have made equal in land and money in the year 1880 or previous to that date. I also after the above date and gift I loaned to Wm. Eli Carpenter $1,500 hundred dollars of date Jan. 11th, 1883 for which I hold his promissory note bearing 5 per cent interest from date until paid; I also lone to my son Everett Carpenter after the above date and gift money for which I hold his note of date Feb. 1st, 1883, for six hundred and sixty-eight dollars with 5 per cent interest until paid; I also advance him one hundred and thirty-six dollars 50/100 dollars at different times; also advanced him on Dec. 17, 1887, one hundred and three 70/100 dollars, also Jan. the 2nd, 1887, fifty-three and 20/100 dollars, also Jan the 18th, 1889, twenty-two 20/100 dollars, I will and desire in the final settlement of my estate that he be charged 5 per cent annum until paid, I also will and desire my son John W. Carpenter, deceased, children, four in number, namely Harriet F. Fisk, nee Carpenter, Eldredge T. Carpenter, Mary F. Carpenter and John Anna Carpenter to be made equal to what I have lone to my two sons Eli and Everett as above mentioned after the first gift, and then an equal division equally divided between John's four children representing one share and Eli and Everett, hereby revoking all other wills made by me."

This controversy was precipitated by an attempt on the part of the said devisees to divide among themselves

$8,400.00 realized from the sale of about 40 acres of land owned by the testator, and which money was deposited by agreement in a certain named bank, to draw interest until this controversy is settled.

It is the contention of appellees that the widow of testator received an absolute estate in all the income from the estate of her deceased husband so long as she lived, or at least so long as she remained his widow, as provided in the will, and this contention is based upon the following terms of that paper: "I will and desire that my beloved wife, Mary A. Carpenter *have* the proceeds of my estate, less the taxes and keeping up the repairs of my realty . . . and (I) will and desire that my beloved wife *have* the full proceeds during her natural life or (while she) remains my widow."

Undoubtedly he used the word "proceeds" in the foregoing clause to express the idea of income, and this sentence should be read as if he had given to his said wife the income of said estate, less taxes and upkeep of the realty. Especial emphasis is placed by appellees upon the first clause quoted above wherein testator wills to his wife the "proceeds of my estate," and uses in connection therewith the word "have." I desire that my beloved wife *have* the proceeds of my estate, less, etc. This clause, we think, must be read in connection with the clause which forms the last part of the same sentence wherein the testator provided: "(I) will and desire that my beloved wife have the above proceeds during her natural life or (so long as she) remains my widow." So read, it is apparent that the widow is to have the income arising from the estate during her natural life, or while she remains the widow of the testator, and no longer, but *have* such income absolutely. This part of the will gave to the wife an absolute estate in all the proceeds (income) of the estate of her deceased husband, but this did not include the interest on the notes mentioned in the will, as we will later see. She took no part of the corpus of the estate under that provision of the will. All this is, by the way, for the interest on the said notes was not intended to be and was not collected either by the testator or his wife, or anyone, the notes representing merely advancements made to the two sons to whose accounts the same were to be charged. The widow did not remarry. She died in 1919, without attempting to make any disposition of the interest on said notes or other income from the estate of her deceased husband.

The next provision of the will, which it is necessary for us to consider in order to determine this controversy, makes it quite plain that the testator desired that his three sons share equally in his entire estate. In the year 1880 he gave his sons, John, Eli and Everett, each, some land and money of equal value. After that date and in 1883, he loaned Eli $1,500.00 and took from him a promissory note for said amount with interest at five per cent "from date until paid." In the same year he loaned his son Everett $668.00 and took from Everett his promissory note with interest at five per cent "until paid." He also advanced to Everett, at different times, the following sums: $136.50, $103.70, $53.20, $22.20. After reciting all these facts and giving the dates of such advancements the testator adds: "I will and desire in the final settlement of my estate that he (Everett) be charged 5 per cent annum until paid." This last statement concerning the interest due by Everett, we understand, relates only to the advancements made by the testator to said son after the said son had borrowed in February, 1883, the $668.00 for which he gave his promissory note bearing interest. As the father lived until 1903, about twenty years after he made the loans to his sons for which they gave him their notes, and did not attempt to collect the same, it is manifest that the father did not intend to require the sons to repay this money to him, but said sums should be treated as advancements and the sons should account to the other heirs in the final settlement of testator's estate for such advancements with interest at five per cent. His will, when read as a whole, proves the testator to have been a very just and considerate man. He wanted all his children to share his property alike. While it is awkwardly expressed, it is clear from the last sentence of his will that he desired the four children of his deceased son, John, to have one-third of the residue of his estate, and one-third each to go to Eli and Everett. This is expressed as follows: "I also will and desire my son, John W. Carpenter, deceased, children, four in number, namely Harriet F. Fisk (nee Carpenter), Eldredge T. Carpenter, Mary F. Carpenter and John Anna Carpenter, to be made equal to what I have lone to my two sons, Eli and Everett, as above mentioned, after the first gift." The first gift was made in 1880, and at that time John was living and received his equal portion. In other words, the sons were all equal up to that time, and testator intended to keep them so, for he says he desired his

four grandchildren, issue of his son John, to be "made equal to what I have loaned to my two sons, Eli and Everett, as above mentioned." In other words, the testator desired that Eli and Everett be charged in the final settlement of his estate with the amounts he loaned them in 1883, et cetera, together with interest, and the interest was as much a part of the contract by which he loaned the money to his sons as was the principal, both being mentioned in the notes. To remove any doubt about whether Everett was to be charged interest upon the advancements made by the testator to him, a provision was placed in the will reading: "I will and desire in the final settlement of my estate that he (Everett) be charged five per cent annum until paid." We, therefore, conclude that the testator intended for his sons Eli and Everett, to account to his estate in the final settlement not only for the principal of the money which he loaned to them but for the interest as well. The interest on the advancements were not to be paid to the testator or his wife but to be taken into consideration only in the final settlement of the estate.

It is insisted, however, that appellants are not entitled to have the interest paid from the date of the loans, but only from the death of the wife, which occurred in 1919, for they say the wife was entitled to the entire income from the estate and the interest from these loans was a very material part of the said income. This interest was not a part of the income of the estate for it was not to be paid but only to be charged as advancements in the final settlement in order to make the other heirs equal. Of course, if this were not true, said interest should have been paid to the widow during her lifetime, and if it had been so paid she would have been entitled to make use thereof as her own.

As the trial court held the interest on the said notes and advancements vested absolutely in the widow during her lifetime and adjudged appellees, Eli and Everett, to account to the estate on final settlement for interest only from the death of the widow in 1919, the judgment must be reversed for proceedings consistent with this opinion.

Judgment reversed.